IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRAIG CUNNINGHAM, : <br> Plaintiff, : <br> v. : <br> AGROFRESH, INC., et al., : <br> Defendants : | Civ. No. 2:19-04274-WB |

JOINT REPORT OF RULE 26(f) MEETING AND PROPOSED DISCOVERY PLAN

Pursuant to this Court's Order of December 18, 2019 (ECF No. 8) and Federal Rule of Civil Procedure 26(f), counsel for Plaintiff Craig Cunningham ("Cunningham" or "Plaintiff") and Defendants AgroFresh, Inc., AgroFresh Solutions, Inc. (collectively "AgroFresh"), Jordi Ferre, and Graham Miao (collectively with AgroFresh, "Defendants") conferred on January 30, 2020 and submit to Chambers the following report of their meeting for the Court's consideration:

**1.    Discussion of claims, defenses, and relevant issues**

    **A.    <u>Plaintiff's Statement of Claims/Facts/Issues</u>**

Plaintiff, Craig Cunningham ("Mr. Cunningham") has brought this action against Defendants after being unlawfully terminated from his employment on or about August 14, 2019. Mr. Cunningham contends that he was abruptly terminated after making complaints of unlawful racial discrimination as well as unlawful financial transactions taking place within the company.

Mr. Cunningham is a Certified Treasury Professional ("CTP") which binds him to certain legal and ethical mandates. By way of example, as detailed in the operative pleading, Mr. Cunningham voiced objections to expenditures made by Defendant Jordi Ferre, the company CEO. Mr. Ferre is alleged by Mr. Cunningham to have been using company funds to maintain a

relationship with a woman in Thailand. Mr. Cunningham also raised concerns that Defendants were violating certain provisions of the Internal Revenue Code relating to travel expenses.

Mr. Cunningham additionally claims in this action that he was terminated for opposing unlawful racial discrimination against an African American co-worker. Mr. Cunningham articulated a specific concern by way of e-mail on or about March 8, 2019 that an African American co-worker was the only person in the office without benefits. He followed up with verbal discussions with executive management. This included discussions about racial disparity. Mr. Cunningham alleges that Defendants were incensed with him for raising these concerns and even expressed anger about the same.

Mr. Cunningham generally had good evaluations and did not receive any progressive discipline during his employment. Yet, it was implied to Mr. Cunningham that he was being terminated for "performance" reasons, which Mr. Cunningham claims is really a pretext for discrimination and/or retaliation.

Mr. Cunningham currently has one claim against all Defendants for violations of 42 U.S.C. §1981 and a Pennsylvania common law wrongful discharge claim. He intends to seek leave (*or consent of Defendants*) to amend his pleading to incorporate an ADEA age discrimination claim, a Title VII retaliation claim that mirrors his current §1981 claim and a retaliation claim under the Sarbanes-Oxley Act ("SOX"). The earliest Mr. Cunningham can file his SOX claim in this Court is March 16, 2020 pursuant to 29 C.F.R. § 1980.114 (allowing, *inter alia*, a claimant to bring a <u>de novo</u> civil suit in federal court after 180 days if OSHA has not reached a final decision). Mr. Cunningham did not receive a "Right to Sue" letter for his EEO claims until approximately January 21, 2020.

Mr. Cunningham also intends to seek leave to amend his pleading to incorporate a claim under the Pennsylvania Human Relations Act ("PHRA") on or after September 17, 2020 when the claim will become ripe consistent with 43 P.S. § 962(c)(1) (requiring a claim to be in the agency for one year before a complainant may file suit). This claim would mirror his other anti-discrimination and retaliation claims.

### B.     Defendants' Statement of Claims/Facts/Issues

Plaintiff's pled factual allegations for his §1981 retaliation claims are in paragraphs 35 and 36 of the Complaint.  Plaintiff alleges that he sent an email on March 8, 2019 to Defendant Graham Miao (the CFO) in which he expressed concerns of discrimination when he learned that Terri Porcher, an African-American hired in early 2019, was not to be given employment benefits after what he understood to be a 90-day probation period. (¶ 35).  Plaintiff further alleges that he had follow-up discussions with unidentified "executive management" in which he stated his view that "it seemed" as if benefits were being denied on the basis of race.  (¶ 36). Plaintiff does not allege any other facts for his §1981 retaliation claim.

Defendants acknowledge that Plaintiff sent Defendant Miao an email on March 8, 2019 regarding Terri Porcher not receiving employment benefits.  In that email, Plaintiff asked the question: "Is it discrimination?"  Plaintiff did not affirmatively state in his email that Ms. Porcher was not given benefits because of her race.  Mr. Miao responded to the email by meeting with Plaintiff in March 2019 to explain why Ms. Porcher was not given employment benefits. Karen Dangovetsky, Human Resource Director for AgroFresh, also attended this meeting.  In that meeting, Plaintiff was informed that Ms. Porcher was hired in January 2019 as a temporary employee for a six-month assignment and that consistent with AgroFresh's practice regarding temporary employees, no employment benefits were provided to Ms. Porcher.  In this March 2019 meeting, Mr. Miao and Ms. Dangovetsky assured Plaintiff that race had nothing to do with

Ms. Porcher not receiving employment benefits. Neither Mr. Miao nor Ms. Dangovetsky were angry with Plaintiff for expressing his concerns. In the offer letter signed by Ms. Porcher on January 2, 2019, Ms. Porcher's job title was "Temporary Accounts Payable Clerk"; Ms. Porcher's status was "temporary for 6 months"; and there was no reference to employment benefits. It should be noted that AgroFresh hired Ms. Porcher in January 2019 at the recommendation of Plaintiff (who knew her from a past employer) and paid Ms. Porcher at the amount/level recommended by Plaintiff.

Plaintiff's March 8, 2019 email and the above-referenced meeting in March 2019 represented the communications between Plaintiff and Mr. Miao and Ms. Dangovetsky regarding the subject of possible discrimination in Ms. Porcher not getting employment benefits. As of the time that Plaintiff was terminated in August 2019, Defendant Ferre (CEO) had no knowledge of Plaintiff's concern of possible race discrimination in Ms. Porcher not receiving employment benefits. In the end, Plaintiff's concerns of possible discrimination involving Ms. Porcher had nothing to do with Plaintiff's termination months later in August 2019. Instead, AgroFresh Treasurer James Toth (who began his AgroFresh employment in June 2019) decided to terminate Plaintiff because of Plaintiff's poor performance and workplace behavior/attitude. As one example of Plaintiff's disrespectful and combative attitude towards Mr. Toth (his boss), Plaintiff responded to Mr. Toth's email (June 25, 2019) request for accounting general ledger information by stating in all caps: "I DON'T HAVE A CLUE", and then when Mr. Toth reiterated the request, Plaintiff obnoxiously responded: "Sure I will be your secretary." In mid-July 2019, Mr. Toth wrote his negative review of and concerns regarding Plaintiff next to the different job elements on the AgroFresh job description for Plaintiff's job, Treasury Manager. As one example, Mr. Toth wrote that Plaintiff was deficient in the "strategy of moving cash" and in the

4

analysis of interest rates earned by AgroFresh's cash and in the impact of foreign exchange rate movements and risk.

Plaintiff's wrongful discharge claim is subject to a pending motion to dismiss, primarily on the ground that Plaintiff has not identified a clear mandate of Pennsylvania public policy implicated by his discharge. Should the motion be denied, Defendants have strong factual defenses to Plaintiff's allegations that he was terminated for reporting "violations."

### 2. Initial and informal disclosures

The parties agreed to exchange disclosures required by Rule 26(a)(1) by February 7, 2020.

### 3. Formal discovery

The parties propose a period of 180 days for discovery from the date of the Rule 16 conference. This length of time is needed as Plaintiff intends to file a motion to amend the Complaint in March 2020 in order to assert a claim under the Sarbanes Oxley Act ("SOX"). The SOX claim is not yet ripe, because the period for administrative exhaustion before the U.S. Department of Labor has not yet concluded. If a SOX claim is added to the case, additional discovery will be needed. A SOX claim presents very different discovery needs for both parties when compared to the §1981 retaliation claim. In addition, Plaintiff's counsel discussed at the Rule 26(f) conference that he may identify as many as 12 persons as part of Plaintiff's Rule 26(a)(1) disclosures. If so, Defendants may need to depose more individuals than a typical single-plaintiff discrimination/retaliation case. Accordingly, the parties respectfully propose a period of 180 days for discovery.

4. **Electronic discovery**

The parties discussed electronic discovery issues at their Rule 26(f) conference and expect to be able to work amicably on any electronic discovery that will be needed. At this time, Plaintiff is not yet prepared to commit to the custodians whom Defendants have proposed, as Plaintiff would like to conduct some initial written discovery before seeking specific electronic discovery -- an approach acceptable to Defendants. Counsel for Plaintiff and Defendants have worked on cases in the past, and based on that experience, the parties expect that they will be able to agree upon a set of custodians and timeframes for electronic discovery soon after initial disclosures and/or written discovery responses are exchanged. Defendants are well-acquainted with electronic discovery obligations and protocols. The parties therefore respectfully propose that the Court not enter its standard electronic discovery order and instead allow the parties to work through their electronic discovery requests (and responses thereto) in the normal course of discovery.

5. **Expert witness disclosures**

At this point, the parties cannot yet determine whether either side will call an expert witness. Accordingly, the parties respectfully propose that a 60-day period for expert discovery be set following the end of fact discovery. This 60-day period will provide the parties with sufficient time to exchange expert reports and conduct expert depositions, if necessary. The parties suggest that Plaintiff provide an expert report, if at all, no later than the twenty days following the end of the fact discovery period; that Defendant provide an expert report, if any, within the following twenty days; and that the parties have twenty days to conduct expert depositions.

### 6. Early settlement or resolution

An early settlement/resolution is unlikely. On September 9, 2019, Plaintiff's counsel submitted to AgroFresh a very high demand presented as "take it or leave it" /non-negotiable demand, with an accompanying statement that Plaintiff would file his claims within a week absent acceptance of the demand. Given the firm, non-negotiable stance of Plaintiff, AgroFresh did not view Plaintiff's demand to be an invitation to engage in settlement discussions. Plaintiff has not changed his high demand figure or his non-negotiable stance. Absent any material, significant change in Plaintiff's position, Defendants believe that an early settlement is not possible. Defendants also note that meaningful settlement discussions cannot occur without Plaintiff's mitigation information/documents. The parties are amenable to a settlement conference before a Magistrate Judge after fact discovery ends.

### 7. Trial date

In light of the outstanding issues regarding the scope of the Complaint or any amended complaint and the probability that Defendants will file a motion for summary judgment at the conclusion of discovery, the parties request that no trial date be set at this point. Instead, the parties propose that the Court set a deadline to file dispositive motions for 45 days after the close of expert discovery. If a dispositive motion is filed, then the parties can fully brief the motion without the need for the parties to engage in costly pretrial preparation. Should the Court deny a dispositive motion in whole or in part, the parties propose that the Court then conduct a telephone conference with the parties to set a trial date.

**8.     Other**

The parties have no other issues for their Rule 26(f) Report.

Respectfully submitted,

| | |
|---|---|
| */s/ W. Charles Sipio* | */s/ Raymond A. Kresge* |
| W. CHARLES SIPIO | RAYMOND A. KRESGE |
| Karpf, Karpf, & Cerrutti | JASON CABRERA |
| 3331 Street Road | Cozen O'Connor |
| Bensalem, PA 19020 | 1650 Market Street, Suite 2800 |
| Telephone: (215) 639-0801 | Philadelphia, PA  19103 |
| | Telephone:  (215) 665-2000 |
| Dated: February 3, 2020 | Dated: February 3, 2020 |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |